**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN JAY PETTEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-131E |
| | ) | |
| JAMES SHERMAN, | ) | Judge Maurice B. Cohill, Jr. |
| | ) | Magistrate Judge Susan Paradise Baxter |
| Respondent. | ) | |
| | ) | |

**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**

AND NOW, comes Respondent James Sherman, by and through his attorneys, Mary Beth

Buchanan, United States Attorney for the Western District of Pennsylvania, and Christy C. Wiegand,

Assistant U.S. Attorney for said district, and respectfully responds to the Petition for Writ of Habeas

Corpus ("Petition") filed herein as follows:

**I.  INTRODUCTION**

Petitioner, Ryan Jay Pettey, has filed a Petition for Writ of Habeas Corpus pursuant to 28

U.S.C. § 2241, challenging the Federal Bureau of Prison's ("BOP's") application of prior custody

credit to his sentence.  Petitioner is currently incarcerated at the Federal Correctional Institution in

McKean County, Pennsylvania ("FCI McKean").

**II.  CLAIM**

Petitioner asserts that he should receive credit for time that he served in official detention in

Michigan state prison because, he claims, his state parole date was delayed due to the processing of

federal criminal charges.   As relief, Petitioner seeks credit for all of the time that he served in the

state between his original anticipated state parole date of September 26, 2001, through March 5,

2004, the date he was actually paroled.

## III.  <u>FACTS</u>

On or about August 7, 2000, Petitioner Pettey was arrested by Michigan state authorities, and held without bond pursuant to state criminal charges.  See **Document 1b**, Basic Information Report, attached to the Declaration of Joyce Horikawa.    On or about November 21, 2000, Petitioner was sentenced in state court to a 14 to 240 month term of imprisonment for Possession with Intent to Deliver 1-50 grams cocaine.  The state sentencing court directed Petitioner's state sentence to commence the date of his arrest by state authorities, August 7, 2000.  See **Document 1c**, State Judgment of Sentence, dated November 21, 2000, attached to the Declaration of Joyce Horikawa.

On May 29, 2001, the Michigan Parole Board issued a Notice of Decision informing Petitioner that it had determined that he was an appropriate candidate for state parole.  The Notice also advised Petitioner that "[m]isconduct, security reclassification or other adverse information may result in suspension of this parole action."  See **Document 1d**, Michigan Department of Corrections, Parole Board Notice of Decision, dated May 29, 2001, attached to the Declaration of Joyce Horikawa.

On or about September 13, 2001, a Special Agent with the Federal Bureau of Investigation ("FBI") notified the Michigan Department of Corrections that an investigation into federal criminal charges was pending against Petitioner. See **Document 2a**, Request for Hold/Notification, dated September 13, 2001, attached to the Declaration of Penny Lundgren.  Subsequently, the Michigan Parole Board suspended Petitioner's state parole date.  The decision to suspend the state parole was based upon information received from the FBI regarding the pending federal investigation into Petitioner's involvement in federal criminal activities.  See **Document 2b**, Michigan Department of

Corrections Parole Board Notice of Decision form, attached to the Declaration of Penny Lundgren.

On October 2, 2001, the United States District Court for the Western District of Michigan issued a superceding indictment charging Petitioner with federal criminal charges. On October 11, 2001, a federal arrest warrant was issued for the arrest of Petitioner. See **Document 1**, at **¶ 7a**. On October 4, 2001, the Michigan Parole Board issued a Notice of Decision informing Petitioner Pettey that because it lacked reasonable assurance that he would not become a menace to society or to the public safety, denial of parole was warranted. See **Document 1e**, Notice of Decision dated October 4, 2001, attached to the Declaration of Joyce Horikawa. The Parole Board recommended that Petitioner demonstrate responsible behavior through positive work reports, good reports of conduct in his housing unit, avoidance of situations which could result in misconduct citations, substance abuse programming, and additional positive prison behavior. The Parole Board also advised Petitioner that compliance with its recommendations would not necessarily guarantee parole. Id.

The United States District Court for the Western District of Michigan issued a writ of habeas corpus ad prosequendum on October 12, 2001, directing the United States Marshals Service to produce Petitioner for an initial appearance/arraignment on criminal charges. See **Document 1**, at **¶ 7b**. On October 25, 2001, while Petitioner was serving his state sentence, he was "borrowed" by federal authorities pursuant to the federal writ of habeas corpus ad prosequendum. See **Document 2c**, United States Marshals Service Form 129, at p. 2, attached to the Declaration of Penny Lundgren. On or about November 1, 2001, in the United States District Court for the Western District of Michigan, a plea of not guilty was entered after Petitioner failed to enter a plea. See **Document 1**, at **¶ 7c**. On May 3, 2002, Petitioner pleaded guilty to the superceding information. See **Document 1**, at **¶ 7d**. Petitioner was subsequently sentenced by the United States District Court for the

3

Western District of Michigan to a 60 month term of imprisonment for Interstate Travel in Aid of Racketeering, 18 U.S.C. §§ 1952(a)(3) and 2. The Court directed that Petitioner's federal sentence be served consecutively to the state sentence imposed by the Michigan State Court in Docket Number 00-08520. See **Document 2d**, at p. 2, Federal Judgment and Commitment Order, attached to the Declaration of Penny Lundgren. Petitioner's federal sentence was later amended to reflect that following service of his 60 month federal sentence, Petitioner would serve a three year term of supervised release. See **Document 2e**, at p. 3, Amended Federal Judgment and Commitment Order, attached to the Declaration of Penny Lundgren.

On or about August 22, 2002, Petitioner was returned to the custody of Michigan State authorities in satisfaction of the federal writ of habeas corpus ad prosequendum. See **Document 2c**, at p. 2. The following month, the State Parole Board again advised Petitioner Pettey that, because it lacked reasonable assurance Pettey would not become a menace to society or to the public safety, continued denial of parole was warranted. See **Document 1f**, Notice of Decision dated September 20, 2002, attached to the Declaration of Joyce Horikawa. The following year, the Michigan State Parole Board determined that it would again deny parole to Petitioner on the same basis. See **Document 1g**, Notice of Decision, dated August 12, 2003, attached to the Declaration of Joyce Horikawa.

In the fall of 2003, Petitioner was again borrowed from state authorities, on federal writs of habeas corpus ad testificandum, for the periods September 22 through October 6, and November 6 through November 28. See **Document 2c**, at p. 2. On March 5, 2004, Petitioner Pettey was paroled from his state sentence to a federal detainer. See **Document 1h**, Notice of Parole, attached to the Declaration of Joyce Horikawa. See also, **Document 2c**, at p. 2.

4

In July, 2004, Petitioner was designated to FCI McKean for service of the 60 month federal sentence imposed by the United States District Court for the Western District of Michigan.  <u>See</u> **Document 1a**, at p. 1.   Petitioner's federal sentence was computed as commencing on March 5, 2004, the date he had been paroled by the Michigan Department of Corrections.  Petitioner was not awarded any prior custody credit.  Assuming that Petitioner receives all Good Conduct Time available to him under 18 U.S.C. § 3624(b), his projected release date is July 12, 2008.  <u>See</u> **Document 1i**, at p. 2, Sentence Computation, attached to the Declaration of Joyce Horikawa.  <u>See also</u>, **Document 2**, Declaration of Penny J. Lundgren.

On or about October 18, 2004, Petitioner submitted a Request for Administrative Remedy, in which he challenged the computation of his prior custody credit.   <u>See</u> **Document 1j**, Administrative Remedy Packet, Case Number 357014, at p. 1, attached to the Declaration of Joyce Horikawa.  Petitioner argued that time he served in state prison after September 26, 2001, was due to a "request for hold" issued by the FBI and information provided by the FBI to the Michigan State Parole Board, and that Petitioner was entitled to credit against his federal sentence for this time under 18 U.S.C. § 3686.  <u>Id</u>.   In a response dated November 9, 2004, the Warden denied Petitioner's request, and explained that the Michigan Parole Board had exercised its discretionary right to reconsider, and suspend,  Plaintiff's original projected parole date, based upon the seriousness of the federal criminal offenses with which Petitioner had been charged.   The Warden further explained that the federal charges did not cause Petitioner to be held beyond his state maximum term of 20 years.  <u>Id</u>., at p. 2.

On or about November 22, 2004, Petitioner submitted a Regional Administrative Remedy Appeal, challenging the Warden's response.  <u>Id</u>., at p. 3.  Petitioner's Regional Appeal was denied

in a response dated December 21, 2004, which cited 18 U.S.C. § 3585(b) (prohibiting the award of prior custody credit that has been credited against any other sentence) and explained that because the time Petitioner sought to have credited as prior custody credit had been credited against his state sentence, this time did not qualify as federal prior custody credit.  Id., at p. 4.

Petitioner appealed the Region's response to the Bureau of Prisons Central Office.  Id., at p. 5.   On February 17, 2005, the Administrator of National Inmate Appeals for the Bureau of Prison concurred with the previous findings that BOP had properly computed Petitioner's federal sentence, and denied Petitioner's appeal.  Id., at p. 6.   Petitioner filed the instant Petition for habeas relief on the same issue on May 3, 2005.

## IV.  ARGUMENT

**A.    The Petitioner is not entitled to the relief he seeks because his federal sentence was properly computed.**

  **1.    18 U.S.C. §3585(b) precludes crediting the time spent between September 26, 2001 and March 5, 2004 against Petitioner's federal sentence, because that same time has already credited against his state sentence.**

In any computation of a federal sentence, two separate decisions must be made: 1) when the federal sentence commences and 2) to what extent the defendant can receive credit for time spent in custody prior to commencement of sentence.  Chambers v. Holland, 920 F. Supp. 618, 621 (M.D.Pa.), aff'd., 100 F.3d 946 (3d Cir. 1996); United States v. Smith, 812 F. Supp. 368, 370 (E.D.N.Y. 1993).  For an offense committed on or after November 1, 1987, the determination regarding the commencement of federal sentence is governed by 18 U.S.C. § 3585(a), and prior custody credit is governed by 18 U.S.C. 3585(b).

A federal sentence commences on the date a defendant is received in custody awaiting

6

transportation to, or arrives voluntarily at, the official detention facility at which the sentence is to be served. 18 U.S.C. § 3585(a). See Pinaud v. James, 851 F.2d 27 (2d Cir. 1988); Salley v. United States, 786 F.2d 546 (2d Cir. 1986); Chambers v. Holland, 920 F. Supp. at 621. Pursuant to 18 U.S.C. § 3584, if a term of imprisonment is imposed on a defendant who is subject to an undischarged term of imprisonment, the federal sentencing court may impose either a concurrent or a consecutive sentence.[1] 18 U.S.C. § 3584.    Here, the federal sentencing court exercised its authority to impose a consecutive sentence.   Thus, because Petitioner's federal sentence was expressly directed to run consecutive to his state sentence, his federal sentence properly commenced upon the date of Petitioner's state parole, or March 5, 2004. See **Document 2d**, at p. 2; **Document 2e**, at p. 2; **Document 1h**.

Once a prisoner's sentence commences, he may be entitled to prior custody credit for time spent in official detention. 18 U.S.C. § 3585(b)  provides:

> Credit for prior custody. –  A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

---

[1] 18 U.S.C. 3584 provides, "If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively....Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently."   BOP has interpreted this statute as directing that a term of imprisonment imposed on an inmate who is serving an undischarged term of imprisonment is presumed to be consecutive, unless the court specifically directs that its sentence run concurrently with the undischarged term of imprisonment.

**that has not been credited against another sentence**.

18 U.S.C. § 3585(b)(emphasis added).

Under § 3585(b), the Attorney General is responsible for computing prior custody credit. United States v. Wilson, 503 U.S. 329, 334-336 (1992). Pursuant to 28 C.F.R. § 0.96, this authority has been delegated to the BOP. 18 U.S.C. § 3585(b) expressly limits prior custody credit to time an inmate serves in official detention after the commission of the federal offense and prior to the commencement of the federal sentence. 18 U.S.C. § 3585(b). Also, the statute expressly limits prior custody credits to time that has not been applied against any other sentence. Id.

The last phrase of § 3585(b) unequivocally demonstrates that Congress intended that a defendant not receive double credit for time served prior to the commencement of his/her federal sentence. United States v. Wilson, 503 U.S. at 337. Thus, under § 3585(b), the BOP may not grant prior custody credit for time that has been credited against another sentence. Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001); Tisdale v. Menifee, 166 F. Supp. 2d 789 (S.D.N.Y.2001).

Here, the evidence shows that the conduct involved in Petitioner's federal offense concluded on August 31, 2000. See **Document 2e**, at p. 1. Petitioner commenced service of his federal sentence on March 5, 2004. See **Document 1a**, at p. 3. Between August 31, 2000, and March 5, 2004, Petitioner was held in official detention by the State of Michigan, see **Document 1b, Document 1c**, and **Document 1h**, [2] and the evidence demonstrates that all time Petitioner served in official detention from August 7, 2000, through March 5, 2004, was credited against his state

---

[2]**Documents 1b and 1c** show that Petitioner was arrested on August 7, 2000, and held without bail or bond, and that Petitioner was sentenced in state on November 21, 2000, effective August 7, 2000. **Document 2f** shows that Petitioner was paroled from his state sentence to a federal detainer on March 5, 2004.

sentence.  <u>See</u> **Document 1b, Document 1c, and Document 1h**.    Accordingly, this time is not available for treatment as prior custody credit against his federal sentence.  18 U.S.C. § 3585(b); <u>United States v. Wilson</u>, <u>supra</u>, <u>Rios v. Wiley</u>, <u>supra</u>.

Because 18 U.S.C. § 3585(b) precludes the BOP from treating, as federal prior custody credit, any time served in official detention prior to the commencement of a federal sentence that has already been credited against another sentence, inmate Pettey's Petition should be denied.

### 2.    Contrary to Petitioner's assertion, 18 U.S.C. § 3568 (repealed) does not apply to the computation of his  sentence.

Petitioner also argues that pursuant to 18 U.S.C. § 3568 (repealed), he should receive federal prior custody credit for time served in state custody that was also credited against his state sentence. This argument lacks merit.

18 U.S.C. § 3568 provided:

> The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence.  The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

18 U.S.C. § 3568 (repealed November 1, 1987).

Section 3568 was effectively repealed in November 1987 by operation of various provisions of the Sentencing Reform Act of 1984 (SRA), including 18 U.S.C. § 3585(b), which, as discussed <u>supra</u>, expressly limits the award of prior custody credit to time that was not credited against any other sentence.  18 U.S.C. § 3585(b).[3]  <u>See also</u>, <u>U.S. v. Wilson</u>, 503 U.S. 329, 332-333 (1992).  As

---

[3] The Sentencing Reform Act was effective November 1, 1987, and applies to all offenses committed on or after November 1, 1987.

such, under the sentence computation statute which governs this case, inmates like Petitioner, whose offenses were committed on or after November 1, 1987, are precluded from receiving prior custody credit for time that was credited against any other sentence. 18 U.S.C. § 3585(b).

The cases cited by Petitioner in support of his argument either do not apply to, or are distinguishable from, this case. For example, Davis v. Attorney General, 425 F.2d 238 (5th Cir. 1970) and Shaw v. Smith, 680 F.2d 1104 (5th Cir. 1982), address jail time credit under § 3568; however, both cases predate the SRA, and do not address § 3585(b)'s proscription against double credit.

Rosemond v. Menifee, 137 F. Supp. 2d 270 (S.D.N.Y. 2000), also cited by Petitioner, is a post-SRA case which is distinguishable from the matter at hand. In Rosemond, an inmate in primary state custody was serving a state sentence. Two days prior to his scheduled parole date, he was "borrowed" by federal authorities pursuant to a federal writ of habeas corpus ad prosequendum. He remained on federal writ status for 87 days before he was returned to New York state custody. Two days after his return to state authorities, he was paroled by the state and released on federal bail. The inmate was subsequently convicted of federal criminal charges, and sought prior custody credit against his federal sentence for the time that he was in custody between the date of his original scheduled state parole date and his actual date of state parole. The United States District Court for the Southern District of New York, relying on pre-SRA case law, held that even though the inmate had no liberty interest in the state parole date and even though 18 U.S.C. § 3585(b) expressly prohibited the Bureau of Prisons from applying time credited against the inmate's state sentence as federal prior custody credit, "fundamental fairness" instructed that this time be credited as prior custody credit. It reasoned that absent the federal action, the inmate would have been released by

10

the state. <u>Rosemond</u>, 137 F. Supp. 2d at 275.

In <u>Rosemond</u>, the inmate's state parole date was not altered prior to his temporary transfer to federal authorities for federal prosecution. Also, in <u>Rosemond</u> the inmate was released on state parole and federal bail just two days after he was returned to state authorities in satisfaction of the federal writ. <u>Rosemond</u>, 137 F. Supp. 2d at 272. Thus, in <u>Rosemond</u>, the evidence suggested that, but for the removal of the inmate on federal writ, the inmate would have been released from custody approximately 87 days earlier.

This case is distinguishable from <u>Rosemond</u>. Here, unlike <u>Rosemond</u>, there is no evidence to support Petitioner's argument that, but for the interference of federal authorities, he would have been paroled by the state at an earlier point in time. The evidence shows only that on September 26, 2001, the state exercised its discretion to suspend Petitioner's state parole date, based upon new information disclosed to the state Parole Board which indicated a lack of "reasonable assurance" that Petitioner would not become a menace to society if released on parole. <u>See</u> **Document 1e, Document 1f, Document 1g, Document 2b**. It was only after Petitioner's projected state parole was suspended by state authorities – and nearly one month <u>after</u> the state suspended Petitioner's state parole date – that Petitioner Pettey was borrowed from state authorities via federal writ of habeas corpus ad prosequendum. <u>See</u> **Document 2c**. Although Petitioner was subsequently twice borrowed from the state by federal authorities via a federal writ of habeas corpus ad testificandum, <u>see</u> **Document 2c**, at p. 2, the final federal writ was satisfied on November 28, 2003, nearly four months before he was paroled. <u>Id.</u>, at p. 2; **Document 1h**. Contrary to the facts of <u>Rosemond</u>, Petitioner does not even suggest that his state parole date was delayed as a direct result of his physical absence

11

from state institutions due to operation of a federal writ.[4]

There is no evidence to suggest, as Petitioner argues, that the state was holding Petitioner beyond his original parole date solely for the benefit of federal authorities. Respondent does not contest that prior to the suspension of his original state parole date, the FBI notified the state of its intent to investigate Petitioner Pettey's involvement in a drug ring and several murders, and there is no evidence to demonstrate that the decision by the Parole Board to suspend Petitioner Pettey's state parole date was based upon anything other than an exercise of the state's discretion to make such determinations based upon information available to the state parole board at the time of the decision. See MICH. COMP. LAWS § 791.235 (1979).

**B.    To the extent Petitioner challenges the legality of the decision to suspend his state parole date, this Court lacks jurisdiction over such issues.**

In "Argument II" of his Petition, Petitioner challenges the decision of the Michigan Board of Parole to suspend his state parole. He argues that but for the suspension of his state parole date (based on allegedly misleading information supplied by the FBI) he would have been paroled by the state to commence service of his consecutive federal sentence. Because this argument is essentially a challenge to the actions of the state parole board, Petitioner's recourse is through an appeal to the state circuit court. Mich. Comp. Laws § 791.234; In re: Parole of Bivings, 242 Mich. App. 363, 368 n. 1, 619 N.W.2d 163 (2000). If Petitioner succeeds in his challenge to action of the state parole board, he may then seek relief with BOP through the administrative remedy process. 28 C.F.R. §

---

[4]Nor could he. Petitioner would not be entitled to any credit for time spent when he was "borrowed" by federal authorities pursuant to a writ of habeas corpus ad prosequendum for processing of federal criminal charges. In such an instance, a prisoner "remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner." Rios v. Wiley, 201 F.3d at 274.

542.10, et seq.

Because Petitioner has produced no evidence that the decision to suspend his state parole date was overturned by a competent court of law, and because Petitioner has failed to produce evidence that after successfully challenging the decision of the state board of parole to suspend his parole date, he fully exhausted BOP's administrative remedy process, all claims raised in Petitioner's "Argument II" should be dismissed.

## V.  CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should deny the Petition for Habeas Corpus.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


/s/

CHRISTY WIEGAND
Assistant U.S. Attorney
U.S. Courthouse and Post Office
700 Grant Street, Suite 400
Pittsburgh, PA 15219
(412) 644-3500

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have served this date a copy of the within Response, by mail, upon

the following:

Ryan Jay Pettey
No. 10698-040
FCI McKean
P.O. Box 8000
Bradford, PA 16701


_____/s/_____

CHRISTY WIEGAND
Assistant U.S. Attorney


Date:  July 1, 2005